Alnisa S. Bell
SEYFARTH SHAW LLP
620 Eighth Avenue, 32nd Floor
New York, New York 10018
(212) 218-5500

Samuel M. Schwartz-Fenwick, Ian H. Morrison, Ada W. Dolph (*pro hac vice*)
SEYFARTH SHAW LLP
233 South Wacker Drive
Suite 8000
Chicago, Illinois  60606-6448
(312) 460-5000

Attorneys for Defendant ADP TOTALSOURCE
GROUP, INC., AUTOMATIC DATA
PROCESSING, INC. ADP TOTALSOURCE
RETIREMENT SAVINGS PLAN
COMMITTEE AND NFP RETIREMENT, INC.

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BETH BERKELHAMMER and NAOMI RUIZ, individually and as representatives of a class of participants and beneficiaries on behalf of the ADP TotalSource Retirement Savings Plan, | Civil Action No.: 2:20-cv-05696-ES-JRA |
| Plaintiffs, | **ADP DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS COUNT IX OF PLAINTIFFS' AMENDED COMPLAINT** |
| v. | |
| ADP TOTALSOURCE GROUP, INC., AUTOMATIC DATA PROCESSING, INC., ADP TOTALSOURCE RETIREMENT SAVINGS PLAN COMMITTEE, NFP RETIREMENT, INC., AND JOHN DOES 1–40, | |
| Defendants. | |

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ..............................................................................................................1

BACKGROUND ..............................................................................................................3

      A.    ADP Defendants............................................................................................3

      B.    The Plan........................................................................................................3

      C.    Voya and VFA..............................................................................................4

      D.    Count IX of the Amended Complaint ..........................................................5

STANDARD OF REVIEW ..............................................................................................6

ARGUMENT ..................................................................................................................10

I.      Plaintiffs lack constitutional standing to pursue count IX. ...........................10

II.     Count IX of the Amended Complaint fails to state a claim. .........................14

      A.    Plaintiffs do not plausibly allege that any of the ADP
              Defendants acted as fiduciary for purposes of Count IX..................15

      B.    The Amended Complaint pleads no facts substantiating
              Plaintiffs' claim that a reasonable fiduciary in the ADP
              Defendants' situation would have limited use of Plan
               participant data to recordkeeping purposes only................................20

CONCLUSION................................................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*,
727 F.3d 502 (6th Cir. 2013) ................................................................8

*Albert v. Oshkosh Corporation*,
47 F.4th 570 (2022) ...................................................................9, 10

*Allen v. Honeywell Ret. Earnings Plan*,
382 F. Supp. 2d 1139 (D. Ariz. 2005) ....................................................4

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*,
99 F. Supp. 3d 1110 (C.D. Cal. 2015) ....................................................4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................6, 7, 8, 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................*passim*

*Berg v. Obama*,
586 F.3d 234 (3d Cir. 2009) ..............................................................10

*Biery v. Boeing Co. Employee Health & Welfare Ben. Plan*,
No. C04-2467JLR, 2005 WL 1644354 (W.D. Wash. July 12, 2005) .................4

*Braden v. Wal-Mart Stores, Inc.*,
588 F.3d 585 (8th Cir. 2009) ..............................................................7

*Carfora v. v. Teachers Insurance Annuity Association of America*,
Case No. 21 Civ. 8384 (KPF), 2022 WL 4538213 (S.D.N.Y. Sept.
27, 2022) ...................................................................................*passim*

*Divane* v. *Nw. Univ.*,
No. 16 Civ. 8157 (JLA), 2018 WL 2388118 (N.D. Ill. May 25,
2018), *aff'd*, 953 F.3d 980 (7th Cir. 2020), *vacated and remanded
on other grounds sub nom. Hughes* v. *Nw. Univ.*, 142 S. Ct. 737
(2022) ...................................................................................14, 18, 20

ii

*Edmonson v. Lincoln Nat'l Life Ins. Co.*,
    725 F.3d 406 (3d Cir. 2013) ...............................................................11

*Fifth Third Bancorp v. Dudenhoeffer*,
    573 U.S. 409 (2014)...........................................................................7, 8

*FOCUS v. Allegheny Cty. Ct. of Common Pleas*,
    75 F.3d 834 (3d Cir. 1996) .................................................................10

*Gard v. Blankenburg*,
    33 Fed. Appx. 722 (6th Cir. 2002)......................................................15

*Gonzalez v. Planned Parenthood of Los Angeles*,
    759 F.3d 1112 (9th Cir. 2014) ..............................................................4

*Greenberg v. Life Ins. Co. of Va.*,
    177 F.3d 507 (6th Cir. 1999) ................................................................4

*Harmon* v. *Shell Oil Co.*,
    No. 20 Civ. 21 (VB), 2021 WL 1232694 (S.D. Tex. Mar. 30, 2021) .........14, 18

*Horvath v. Keystone Health Plan E., Inc.*,
    333 F.3d 450 (3d Cir. 2003) ...............................................................11

*Hughes v. Northwestern University*,
    142 S. Ct. 737 (2022)....................................................................6, 7, 8

*Lettrich v. J.C. Penney Company, Inc.*,
    90 Fed. Appx. 604 (3d Cir. 2004)........................................................15

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)............................................................................10

*Massaro* v. *Palladino*,
    19 F.4th 197 (2d Cir. 2021) ...............................................................16

*No. 84 Emp'r-Teamster Jt. Counsel Pension Tr. Fund v. Am. W.
    Holding Corp.*,
    320 F.3d 920 (9th Cir. 2003) ...............................................................4

*Noorily v. Thomas Betts Corp.*,
    188 F.3d 153 (3rd Cir. 1999) ..............................................................15

*O'Shea v. Littleton*,
  414 U.S. 488 (1974).......................................................................................10

*In re Omnicare, Inc. Sec. Litig.*,
  769 F.3d 455 (6th Cir. 2014) .........................................................................4

*Pegram v. Herdrich*,
  530 U.S. 211 (2000)..................................................................................15, 16

*Perelman v. Perelman*,
  793 F.3d 368 (3rd Cir. 2015) ..........................................................11, 12, 13

*Sanders v. Brown*,
  504 F.3d 903 (9th Cir. 2007) .........................................................................4

*Smith v. CommonSpirit Health*,
  37 F.4th 1160 (2022) .............................................................................4, 8, 9

*Spokeo v. Robbins*,
  136 S. Ct. 1540 (2016)..............................................................................10, 11

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret.
  Plan* v. *Morgan Stanley Inv. Mgmt. Inc.*,
  712 F.3d 705 (2d Cir. 2013) (Straub, J., dissenting in part)), *aff'd*,
  843 F.3d 561 (2d Cir. 2016) .........................................................................16

*Steckman v. Hart Brewing, Inc.*,
  143 F.3d 1293 (9th Cir. 1998) .......................................................................4

*Sweda v. University of Pennsylvania*,
  923 F.3d 320 (3rd Cir. 2019) .........................................................................7

*Thole v. U.S. Bank N.A.*,
  140 S. Ct. 1615 (2020)..................................................................................11

*Tr. of Upstate N.Y. Eng'rs Pension Fund* v. *Ivy Asset Mgmt.*,
  131 F. Supp. 3d 103 (S.D.N.Y. 2015) .........................................................16

*Troudt v. Oracle Corporation*,
  CASE #1:16-cv-00175-REB-SKC (D. Col. Feb. 26, 2020).............................26

*Vellali v Yale University*,
  3:16-cv-1345 9 (D. CT 21-Oct-22)................................................................14

**Statutes**

Coronavirus Aid, Relief, and Economic Security Act............................................22

ERISA ..........................................................................................*passim*

ERISA, 29 U.S.C. § 1002(2)(A) ................................................................3

ERISA, 29 U.S.C. § 1002(21)(A) ..............................................................15

ERISA, 29 U.S.C. § 1002(21)(A)(i) and (iii) ......................................16, 18, 19, 20

ERISA, 29 U.S.C. § 1002(34)....................................................................3

ERISA, 29 U.S.C. § 1109 ........................................................................15

IRS Code § 413(c)................................................................................3

Pub. L. 116–136, § 2200, Mar. 27, 2020, 134 Stat. 281.......................................22

**Other Authorities**

Federal Rule of Civil Procedure 8 .........................................................7, 8

Federal Rule of Civil Procedure 12(b)(6) ...............................................4, 6, 8

Federal Rule of Evidence 408...........................................................25, 26

Rule 56 ..........................................................................................4

U.S. Constitution, Article III........................................................1, 10, 11

# INTRODUCTION

Despite the Court providing Plaintiffs the opportunity to cure the defects identified in Count IX of the Complaint, Count IX of the Amended Complaint remains fatally deficient and should be dismissed for at least two, independently sufficient reasons.  Count IX asserts that the ADP Defendants breached a fiduciary duty by allegedly allowing the plan recordkeeper Voya Institutional Plan Services, LLC ("**Voya**"), or one or more of its affiliates, to use Plan participant data to solicit the purchase of non-Plan financial products.

First, as a threshold matter, Plaintiff do not adequately allege facts that establish constitutional standing.  In particular, Plaintiffs do not allege an individualized financial harm traceable to the conduct alleged in Count IX, whether in the form of an individual right to any monies disgorged or otherwise as required for standing under Article III of the Constitution.  Indeed, Plaintiffs do not even allege that they were ever approached without their consent by Voya Financial Advisors, Inc. ("**VFA**") (the non-party they claim used participant data to market non-Plan financial products to Plan participants), much less by Voya (the non-party with which the Plan contracted for recordkeeping services), to move funds out of the Plan and into a non-Plan investment vehicle.  And they certainly do not allege that they actually so moved any such funds.

Second, even if Plaintiffs had adequately pleaded standing (which they have not), the claim still would fail. Among other things, Plaintiffs do not plausibly allege that any of the ADP Defendants acted as fiduciary for purposes of the challenged conduct. Further the Amended Complaint fails to allege facts supporting Plaintiffs' claim that a reasonable fiduciary in the ADP Defendants' situation would have limited use of Plan participant data solely to recordkeeping purposes. Additionally, Plaintiffs fail to plead specific facts that show losses to the Plan or any other harm. Plaintiffs plead only that unidentified Plan participants, in general, have rolled "significant assets" out of the Plan and into Voya-managed accounts and financial products. Plaintiffs proffer no support for this speculative assertion, let alone plead any facts as to the fees/performance of any non-Plan products purchased by Plan participants, or that Plaintiffs were ever targeted by any Voya (or any affiliates of Voya) or purchased any Voya proprietary financial products. Even if some participants paid such higher fees, that would not amount to a loss to the Plan, since these fees would have been paid entirely outside the Plan. Plaintiffs also do not plead any non-speculative facts to support their contention that the Plan suffered a decrease in bargaining power or that the Plan could have negotiated any better terms on any arrangement if it had not suffered the alleged loss of bargaining leverage.

The Court should thus dismiss Count IX of the Amended Complaint.

# BACKGROUND[1]

## A.    ADP Defendants

ADP TotalSource Group, Inc. ("**TotalSource**"), is a wholly-owned indirect subsidiary of Automatic Data Processing, Inc.  TotalSource is a Professional Employer Organization ("**PEO**") that provides client-employers with comprehensive administration outsourcing solutions for their employees.  Am. Compl. ¶ 15. One of these solutions is the Plan.  The administrator of the Plan is a committee appointed by TotalSource, which is referred to in the Complaint as the "**ADP TotalSource Retirement Savings Plan Committee**" or the "**Committee**."  Am. Compl. ¶ 28.

## B.    The Plan

The Plan is a "multiple employer plan pursuant to IRS Code § 413(c)," sponsored by TotalSource, and administered by the Committee. Am. Compl. ¶ 12. The Plan is a defined contribution, individual account, pension benefit plan under ERISA, 29 U.S.C. § 1002(2)(A) and § 1002(34).(Am. Compl. ¶ 1).  As of December 31, 2018, the Plan had 114,254 participants with account balances, and combined assets totaling over $4.44 billion.  Am. Compl. ¶ 18.

---

[1] This background information is based on the factual allegations of the Amended Complaint, which are presumed true solely for purposes of this motion.

### C.   Voya and VFA

Plaintiffs allege that the Plan contracted with Voya Institutional Plan Services, LLC ("**Voya**") to provide recordkeeping services.  Am. Compl. ¶ 72. Voya is a Delaware limited liability company that is a wholly owned subsidiary of Voya Retirement Insurance and Annuity Company.  *See* Voya Financial, Inc., Annual Report (Form 10-K), Ex. 21.1, at row 106 (Feb. 22, 2022).[2]  Voya Retirement Insurance and Annuity Company, in turn, is a Connecticut corporation, which is wholly owned by Voya Holdings, Inc.  *Id*. at row 126.  Voya Holdings,

---

[2]  In considering a motion to dismiss, a Court may consider documents that are central to Plaintiffs' claim, publicly available, and judicially noticeable.  *See Smith v. CommonSpirit Health,* 37 F.4th 1160, 1168 (2022) (citing *Greenberg v. Life Ins. Co. of Va*., 177 F.3d 507, 514 (6th Cir. 1999); *In re Omnicare, Inc. Sec. Litig*., 769 F.3d 455, 466 (6th Cir. 2014) ("[W]e have recognized that if a plaintiff references or quotes certain documents, or if public records refute a plaintiff's claim, a defendant may attach those documents to its motion to dismiss, and a court can then consider them in resolving the Rule 12(b)(6) motion without converting the motion to dismiss into a Rule 56 motion for summary judgment.")); *see also Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007); *No. 84 Emp'r-Teamster Jt. Counsel Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 925 n.2 (9th Cir. 2003); *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1125 (C.D. Cal. 2015) (plan-related documents are incorporated by reference upon adjudicating dismissal) (citation omitted); *Biery v. Boeing Co. Employee Health & Welfare Ben. Plan*, No. C04-2467JLR, 2005 WL 1644354, at *3 (W.D. Wash. July 12, 2005) (indisputably authentic extrinsic documents referenced in the complaint may be used to adjudicate a motion to dismiss); *Allen v. Honeywell Ret. Earnings Plan*, 382 F. Supp. 2d 1139, 1148 (D. Ariz. 2005) ("undisputed documents alleged or referenced in the complaint . . . may be considered by the Court").  Further, a court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998); *see also Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1115 (9th Cir. 2014) (same).

4

Inc., is a Connecticut corporation, which is wholly owned by Voya Financial, Inc., a publicly traded corporation. *Id.* at row 105.

Plaintiffs also allege that Voya Financial Advisors, Inc. ("**VFA**") markets one or more proprietary non-Plan financial products to Plan participants using Plan participant data acquired by Voya in the course of its recordkeeping functions. *See* Am. Compl. ¶¶ 246, 250, 251. VFA is a Minnesota corporation, which is wholly owned by Voya Holdings, Inc. *See* Voya Financial, Inc., Annual Report (Form 10-K), Ex. 21.1, at row 102. VFA is not the same entity as Voya, and Plaintiffs do not allege to the contrary. Neither Voya nor VFA is a party to this action.

### D. Count IX of the Amended Complaint

Count IX of the Amended Complaint alleges that the ADP Defendants' "disclosure of Plan participant data to Voya, without any restrictions as to the use of Plan participant data, was a fiduciary breach in that sensitive, highly confidential personal financial data was disclosed and used for purposes of soliciting non-plan retail products from Plan participants." Am. Compl. ¶ 357. In particular, Plaintiffs allege that Voya is the Plan's recordkeeper, *id.* ¶ 81; that "Voya and its affiliates" use "information obtained in Voya's role as recordkeeper to market and sell numerous other products and services to . . . small-business clientele, *id.* ¶ 81; and that by "allowing" "Voya and its affiliates" to use such information for such

purposes, "Defendants failed to act in the exclusive interest of participants."[3]  *Id.* ¶ 358.

## STANDARD OF REVIEW

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The plausibility requirement "asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (citation omitted).  Toward that end, a plaintiff must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.*  Moreover, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 557)).

The Supreme Court has expressly made clear that this pleading standard applies to ERISA claims.  In its recent decision in *Hughes v. Northwestern University*, the Supreme Court affirmed that allegations of ERISA violations are

---

[3] In their previous Complaint, Plaintiffs also asserted a prohibited transactions claim related to Plan participant data, which they numbered as Count X.  Compl. ¶¶ 336-44 [CM-ECF Doc. 1]  Plaintiffs have abandoned this claim in their Amended Complaint.

properly evaluated under the pleading requirements set forth in *Iqbal* and *Twombly*.

142 S. Ct. 737, 742 (2022), expressly directing the Seventh Circuit on remand to

"apply[] the pleading standard discussed in" *Iqbal* and *Twombly*. *Id*. at 742. In so

doing, the Court rejected the position adopted by some Courts of Appeal that ERISA

claims are exempted from the plausibility pleading requirements of Federal Rule of

Civil Procedure 8(a) as interpreted in *Iqbal* and *Twombly*. *See, e.g*., *Sweda v.*

*University of Pennsylvania*, 923 F.3d 320, 326 (3rd Cir. 2019) (declining to

"extend" *Twombly's* pleading rule, which "[r]equir[es] a plaintiff to rule out every

possible lawful explanation for the [challenged conduct],'" to ERISA claims)

(quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 597 (8th Cir. 2009)

(citation and internal quotation marks omitted)). The *Hughes* Court also cautioned

that evaluating ERISA claims "will necessarily be context specific," citing its

decision in *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409 (2014), in which it

made clear that carefully scrutinizing a plaintiff's allegations is particularly

important in ERISA cases because fiduciaries commonly find themselves "between

a rock and a hard place"—sued no matter what decisions they make. *Id*. Finally,

the Court emphasized the wide range of reasonable fiduciary judgments that can be

made in any given situation, noting that "the circumstances facing an ERISA

fiduciary will implicate difficult tradeoffs" and instructing courts to "give due regard

to the range of reasonable judgments a fiduciary may make based on her experience

and expertise."  And, utilizing the proper pleading standard, motions to dismiss are a

particularly "important mechanism for weeding out meritless [ERISA] claims."  See

*Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).

Since *Hughes*, various Circuit Courts of Appeal have applied the guidance in

*Hughes* to dismiss claims based on allegations that did not rise to the level of

plausibility required under *Iqbal* and *Twombly*.  Shortly after *Hughes*, in *Smith v.

CommonSpirit Health*, the Sixth Circuit upheld the dismissal of a class action

complaint alleging several claims similar to Plaintiffs' claims in this case.  37 F. 4d

1160 (6th Cir. 2022).  In particular, the *CommonSpirit Health* court determined to

proceed down "a well-worn trail" paved by Federal Rules of Civil Procedure 8 and

12(b)(6), as interpreted by *Iqbal* and *Twombly*, noting that "[p]lausibility requires

the plaintiff to plead sufficient facts and law to allow 'the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged,'" *id*. at

1165 (quoting *Iqbal*, 556 U.S. 662, 678), and that "[t]he plausibility of an inference

depends on a host of considerations, including common sense and the strength of

competing explanations for the defendant's conduct.'"  *Id*. (quoting *16630*

*Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013)).

Applying these principles, the Sixth Circuit agreed with the District Court's

conclusion that the plaintiff had not plausibly pleaded that the plan at issue had

acted imprudently in offering actively managed funds in its mix of investment

options by pointing to other investments that had performed better in a given period because, as in *Twombly*, the decision to offer the actively managed funds had an obvious alternative, non-imprudent explanation: the actively managed funds had goals and strategies distinct from the passively managed funds the plaintiff pointed to as purported comparators. *Id*. at 1166-67.  Similarly, the Sixth Circuit upheld the dismissal of the plaintiff's claim that the defendants had permitted the plan to pay various administrative fees that were higher than industry average amounts because the plaintiff's allegations failed to give "the kind of context that could move this claim from possibility to plausibility:" that the recordkeeping services provided to the plan were equivalent to those provided by the plans comprising the average in the industry, and that the management fees were higher than industry averages for reasons other than that they were for actively managed funds as opposed to passively managed funds. *Id.* at 1169.

In *Albert v. Oshkosh Corporation*, the Seventh Circuit similarly upheld the dismissal of excessive recordkeeping and management fee claims on similar plausibility grounds.  47 F.4th 570 (2022).  As to the excessive recordkeeping fee claim, the *Oshkosh* court agreed with the trial court that the plaintiff's complaint "simply does not provide 'the kind of context that could move this claim from possibility to plausibility' under *Twombly* and *Iqbal*," *id*. at 580 (quoting *CommonSpirit Health*, 37 F.4th at 1169), because the complaint did include

allegations as to the "quality or type of recordkeeping services the comparator plans provided." *Id*. at 579.  Similarly, as to the excessive management fees claim, the *Oshkosh* court agreed that the plaintiff had failed to allege a plausible imprudence claim merely by alleging that other investment options exist that had lower fees or higher performance during a given period "[i]n the absence of more detailed allegations providing a sound basis for comparison[.]"  *Id*. at 582 (quotation omitted).

## ARGUMENT

## I.   Plaintiffs lack constitutional standing to pursue count IX.

Plaintiffs must establish standing for each claim.  *Berg v. Obama*, 586 F.3d 234, 238 (3d Cir. 2009) (citing *FOCUS v. Allegheny Cty. Ct. of Common Pleas*, 75 F.3d 834, 838 (3d Cir. 1996)).  In a class action such as this, the named plaintiffs must demonstrate that they have Article III standing for each claim alleged. *O'Shea v. Littleton,* 414 U.S. 488, 494 (1974).  "[T]he irreducible constitutional minimum of standing contains three elements."  *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992).  Plaintiffs must plead facts sufficient to establish that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo v. Robbins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan,*

504 U.S. 555, 560-61 (1992)).  "There is no ERISA exception to Article III."
*Thole v. U.S. Bank N.A.,* 140 S. Ct. 1615, 1622 (2020).

      With respect to the first element, injury-in-fact, Plaintiffs cannot satisfy
Article III by merely "assert[ing] standing as representatives of the plan."  *Id.* at
1620.  Plaintiffs must establish that *they* suffered an injury, not that the *Plan might*
have.  *Id.*  The Supreme Court "has rejected the argument that 'a plaintiff
automatically satisfies the injury-in-fact requirement whenever a statute grants a
person a statutory right and purports to authorize that person to sue to vindicate
that right.'"  *Id.* (quoting *Spokeo,* 136 S. Ct. at 1549).

      Plaintiffs also must demonstrate that the injury they suffered is "concrete
and particularized," and "actual or imminent, not conjectural or hypothetical."
*Spokeo,* 136 S. Ct. at 1548.  At a minimum, Plaintiffs must allege "an individualized
financial harm traceable to the defendant's alleged ERISA violations."  *Perelman v.
Perelman*, 793 F.3d 368, 373 (3rd Cir. 2015) (citing *Horvath v. Keystone Health
Plan E., Inc*., 333 F.3d 450, 455–57 (3d Cir. 2003)).  Although claims seeking
disgorgement of alleged unjust profits do not require a financial loss, Plaintiffs
must nevertheless demonstrate "an individual right to the defendant's profit . . . ."
*Id.* at 375 (quoting *Edmonson v. Lincoln Nat'l Life Ins. Co.,* 725 F.3d 406, 417 (3d
Cir. 2013)).

In this case, Plaintiffs seek disgorgement of profits allegedly realized by non-parties Voya and/or its affiliates from its/their purported use of Plan participant data acquired by Voya in connection with recordkeeping services performed for the Plan. Am. Compl. ¶¶ 241-91, 355-62. According to Plaintiffs, Voya "and its affiliates" used such participant data to "cross-sell" to Plan participants various financial products and services outside of the Plan. *Id.* ¶¶ 241-45. These cross-selling efforts, Plaintiffs theorize, resulted in "plan leakage," or a "loss of assets as a result of transfers out of retirement plans," from participants withdrawing funds from the Plan to invest in proprietary financial products outside of the Plan. *Id.* ¶¶ 246-80. Plaintiffs posit that such "plan leakage," in turn, resulted in harm to the Plan in the form of reduced bargaining power, *id.* ¶¶ 267-68, and to Plan participants who withdrew funds for such out-of-Plan products in the form of fees that allegedly exceeded those charged for in-Plan products. *Id.* ¶¶ 273-80.

Plaintiff's allegations about "plan leakage" and a resulting reduction in Plan bargaining power are sheer speculation. *See* section II, *infra.* Further, and critical for standing purposes, Plaintiffs do not allege that they suffered any "individualized financial harm traceable to" the complained-of conduct. *Perelman*, 93 F.3d at 375 (quotations omitted). In particular, neither of the two Plaintiffs allege that Voya used their Plan participant data to market any Voya out-of-Plan products to either of them, that they transferred any funds from the Plan into any such products, or that

they paid any fees for such products that exceeded what they would have paid for a comparable in-Plan investment.  To the extent Plaintiffs contend they were injured by the Plan's purported loss of bargaining power as a result of "plan leakage," they do not allege facts to support any notion that they had an "individual right to the defendant's profit," *id*. at 375, much less the amount of profit to which they are supposedly entitled or how such amount might be determined.  Rather, Plaintiffs simply rely on speculation that had the challenged practice not occurred, they would have been financially better off.    Indeed, this very speculation is contradicted by Plaintiffs' express allegations in other portions of the Amended Complaint that the Plan enjoys status as a "jumbo plan" or "mega plan" with "enormous bargaining power," Am. Compl. ¶ 19; *see also id*. ¶¶ 18, 182, and that the Plan enjoyed "dramatic growth in assets" between "at least 2013 until 2018." *Id*. ¶ 74; *see also id*. ¶ 166 (in 2014, the Plan had $2.734 billion in assets); ¶ 75 (in 2015, the Plan had $3 billion in assets; by 2016, the Plan's reported assets had grown to $3.5 billion); ¶ 18 (as of December 31, 2018, the Plan had over $4.44 billion in reported assets.") Plaintiffs' speculation is legally insufficient to show the individualized financial harm traceable to the complained-of conduct required for constitutional standing.

## II.    Count IX of the Amended Complaint fails to state a claim.

Count IX of the Amended Complaint fails to state a claim that the ADP

Defendants breached a fiduciary duty by allowing Voya to use Plan participant data

to solicit the purchase of non-Plan financial products.  *See* Am. Compl. ¶¶ 355-62.

Numerous courts have rejected such claims.  *Carfora v. v. Teachers Insurance*

*Annuity Association of America,* Case No. 21 Civ. 8384 (KPF), 2022 WL

4538213 *17 (S.D.N.Y. Sept. 27, 2022); *Harmon* v. *Shell Oil Co.*, No. 20 Civ. 21

(VB), 2021 WL 1232694, at *3 (S.D. Tex. Mar. 30, 2021); *Divane* v. *Nw. Univ.*,

No. 16 Civ. 8157 (JLA), 2018 WL 2388118, at *12 (N.D. Ill. May 25, 2018), *aff'd*,

953 F.3d 980 (7th Cir. 2020), *vacated and remanded on other grounds sub nom.*

*Hughes* v. *Nw. Univ.*, 142 S. Ct. 737 (2022)).[4]  The Court in its order on the motion

---

[4] It is worth noting that a district court in the Second Circuit recently allowed a "cross-selling" claim to survive summary judgment. *Vellali v Yale University*, 3:16-cv-1345 9 (D. CT 21-Oct-22). Not only is that out-of-circuit district court decision of no precedential value here, but that court's decision further underscores the improper nature of Plaintiffs' claim. In allowing the claim to survive summary judgment, the court pointedly distinguished the claim from the type of claim as issue in Berkelhammer.  The court noted "plaintiffs' claim is not that the defendants were imprudent because they disclosed confidential information or because they failed to leverage cross-selling to negotiate a better deal. Rather, the plaintiffs' claim is that Yale's failure to prohibit TIAA from cross-selling was imprudent because Yale made no effort to obtain information about TIAA's cross-selling revenues and thus could not make an informed decision about whether TIAA's total compensation, including that from cross-selling, was no more than reasonable." *Id.* at 40. Plaintiffs do not plead such a claim here and they cannot use their response to this motion to revise their claim to fit what was before the Court in Vellali.  As set forth below, the allegations supporting Plaintiffs' claim here are entirely speculative and conclusory and do not meet the pleading standard.

to dismiss the original Complaint was not inclined to deviate from this clear trend, and nothing in the Amended Complaint justifies doing so now.  *See* Opinion at 34.

### A. Plaintiffs do not plausibly allege that any of the ADP Defendants acted as fiduciary for purposes of Count IX.

Under ERISA, a person is a fiduciary only "to the extent" he or she acts in such a capacity.  *Pegram v. Herdrich,* 530 U.S. 211, 225-26 (2000) (quoting 29 U.S.C. §1002(21)(A)). Plaintiffs' Amended Complaint fails to allege, however, that any of the ADP Defendants was a fiduciary for the purposes of the alleged breach.

When evaluating claims based on alleged breaches of fiduciary duty, "the threshold question is . . . whether that [defendant] was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram* v. *Herdrich*, 530 U.S. 211, 226 (2000)) (citing 29 U.S.C. §§ 1002(21)(A), 1109); *Gard v. Blankenburg*, 33 Fed. Appx. 722 (6th Cir. 2002) (because plan trustees were not engaged in managerial or administrative functions when they amended the plan, they were not acting as fiduciaries); *Lettrich v. J.C. Penney Company, Inc*., 90 Fed. Appx. 604 (3d Cir. 2004) ("It is only when an employer is acting as an administrator of the plan, by paying benefits or investing plan funds, that the employer is a fiduciary who must act in the interest of the plan's participants."); *Noorily v. Thomas Betts Corp.,* 188 F.3d 153, 158 (3rd Cir. 1999) (plan administrator was not liable for breach of fiduciary duty under ERISA where it was not acting as a fiduciary when it engaged in the challenged conduct). "This rule

15

emerges from the principle that 'trustee[s] under ERISA ... wear different hats,' but ERISA requires 'that the fiduciary with two hats wear only one at a time, and wear the fiduciary hat when making fiduciary decisions.'"  *Massaro* v. *Palladino*, 19 F.4th 197, 211-12 (2d Cir. 2021) (quoting *Pegram*, 530 U.S. at 225)).  Thus, "'[t]o state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege facts which, if true, would show that the defendant acted as a fiduciary, breached its fiduciary duty, and thereby caused a loss to the plan at issue." *Tr. of Upstate N.Y. Eng'rs Pension Fund* v. *Ivy Asset Mgmt.*, 131 F. Supp. 3d 103, 121 (S.D.N.Y. 2015) (quoting *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan* v. *Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 730 (2d Cir. 2013) (Straub, J., dissenting in part)), *aff'd*, 843 F.3d 561 (2d Cir. 2016).

ERISA provides, in relevant part, that "a person is a fiduciary with respect to a plan *to the extent*" that the person "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets," or "has any discretionary authority or discretionary responsibility in the administration" of the plan.  29 U.S.C. § 1002(21)(A)(i) and (iii) (emphasis added).  Accordingly, the question becomes whether, with respect to the challenged action, a defendant was engaged in a managerial or administrative function with respect to a plan, or was engaged in the exercise of authority or control with respect to the management or

16

disposition of a plan's assets.  *See, e.g.*, *Carfora v. Teachers Ins. Annuity Ass'n of Am.*, Case No. 21 Civ. 8384 (KPF), 2022 WL 4538213, at **17-18 (S.D.N.Y. Sept. 27, 2022).

Numerous courts have rejected the notion that Plan participant data falls within the definition of "plan assets" under ERISA.  The recent case of *Carfora v. Teachers Insurance Annuity Association of America*, which involves allegations strikingly similar to those in this case, is instructive.  Case No. 21 Civ. 8384 (KPF), 2022 WL 4538213 (S.D.N.Y. Sept. 27, 2022).  In *Carfora*, the plaintiffs, who were current or former researchers and university professors who are participants in defined contribution retirement plans sued the Teachers Insurance Annuity Association of America and TIAA-CREF Individual & Institutional Services, LLC (collectively, "Defendants" or "TIAA"), asserting a variety of claims under ERISA.  TIAA had, for years, provided recordkeeping services to the plaintiffs' plan.  It also provided investment-related services to the plans, including TIAA-affiliated investment options in which participants can invest.  *Id.* at *2.  The plaintiffs alleged that during the period when TIA was providing these services to plaintiffs' plan, it encouraged them and others similarly situated to take distributions from their plans and roll that money over into TIAA's "Portfolio Advisor," a managed account service.  *Id.* at *1.  Once Plaintiffs and other participants moved assets from their employer-sponsored plans into Portfolio Advisor, TIAA allegedly

was able to earn higher fees on those assets.  *Id.*  The plaintiffs alleged that TIAA

determined who to target for high-pressure and misleading sales pitches through

use of plan participant data it acquired in the course of its recordkeeping services.

*Id.* at **2-3.

TIAA moved to dismiss on the grounds that it was not an ERISA fiduciary

during the relevant timeframe.  *Id.* at *4.  In opposing the motion, the plaintiffs

argued that TIAA was a fiduciary because, among other things, it "exercised

discretionary authority or control over the plans' management or administration as

described in 29 U.S.C. § 1002(21)(A)(i) & (iii), through its use of confidential

participant information and through various product design decisions."  *Id.* at *6.

The *Carfora* court rejected both arguments.  As to the plaintiffs' argument

that plan participant data is a "plan asset," the court first noted that "multiple courts

have found that participant information and the like does not fall under the definition

of 'plan assets.'"  *Id.* at *17 (citing *Harmon* v. *Shell Oil Co.*, No. 20 Civ. 21 (VB),

2021 WL 1232694, at *3 (S.D. Tex. Mar. 30, 2021) ("Neither of the promulgated

regulations either expressly or by any plain-language interpretation includes

participant data as plan assets under ERISA."); *Divane* v. *Nw. Univ.*, No. 16 Civ.

8157 (JLA), 2018 WL 2388118, at *12 (N.D. Ill. May 25, 2018) ("The Court has no

doubt that a compilation of the information TIAA has on participants has some value

(to TIAA, at least), but the Court cannot conclude that it is a plan asset under

18

ordinary notions of property rights."), *aff'd*, 953 F.3d 980 (7th Cir. 2020), *vacated and remanded on other grounds sub nom. Hughes* v. *Nw. Univ.*, 142 S. Ct. 737 (2022)).  The Carfora court concluded, "This Court agrees with these courts that the term 'plan assets' plainly extends to money or invested capital, but does not extend to encompass any information that may potentially benefit a servicer of the plan." *Id.* at *18.

Turning to the plaintiffs' second argument, the *Carfora* court explained that, "Plaintiffs seek to avoid these authorities by arguing that this issue does not turn on whether participant information fits the narrow definition of 'assets,' but instead on 'the way TIAA used the data,' which 'was an exercise of fiduciary control and authority over the plans' operations.'"  The court rejected this argument as inconsistent with the statute, which does not use the term "operations," and "which evinces a concern with more consequential, plan-level decision-making through use of the term 'management,' or through requiring a fiduciary to have 'authority or discretionary responsibility in the administration of such plan.' *Id.* at *18 (quoting 29 U.S.C. § 1002(21)(A)(i), (iii)).

In this case, like in *Carfora*, the ADP Defendants were not acting as fiduciaries with respect to actions concerning the use by others of Plan participant

data.[5]  Plan participant data is not a "plan asset," and actions relating to the use of

such data by others is not the type of consequential, plan-level decision-making

ERISA addresses through its use of the terms "discretionary authority or

discretionary control" with respect to the "management" or the "administration" of

an ERISA plan.  29 U.S.C. § 1002(21)(A)(i), (iii).  Rather, the provision of such data

to a recordkeeper is ministerial, and allows the recordkeeper to perform its

ministerial recordkeeping duties.  *See Divane*, 2018 WL 2388118, at *12, *aff'd*, 953

F.3d 980 (7th Cir. 2020), *vacated and remanded on other grounds sub nom. Hughes*

v. *Nw. Univ.*, 142 S. Ct. 737 (2022)) ("[i]t is in no way imprudent for defendants to

allow" a recordkeeper "to have access to each participant's contact information, their

choice of investments, their employment status, their age and their proximity to

retirement[,]" as the recordkeeper "need[s] that information in order to serve as

record keeper.").

> **B.    The Amended Complaint pleads no facts substantiating Plaintiffs'
> claim that a reasonable fiduciary in the ADP Defendants'
> situation would have limited use of Plan participant data to
> recordkeeping purposes only.**

As observed by this Court in its Opinion dated August 23, 2022

("**Opinion**"), "Plaintiffs claim in Count IX [of the Complaint] that Defendants

breached their fiduciary duties by disclosing plan participant data to Voya, which,

---

[5] Unlike in *Carfora*, however, where the Defendant was the party engaged in the challenged practice, *id*. at *1, in this case there is no allegation that any of the ADP Defendants used Plan participant data to market Voya proprietary out-of-Plan financial products to Plan participants.

through VFA, used the data to sell non-Plan, retail, and expensive investment products to Plan participants."  Opinion at 33 (citing Compl. ¶¶ 328–35).  In rejecting this claim, this Court explained that while it "cannot rule out the possibility that Plaintiffs might plausibly allege that a reasonable fiduciary in Defendants' situation would have conditioned use of plan participant data only for recordkeeping purposes," *id.* at 36, "absent from their Complaint are sufficient facts supporting this theory."  *Id.* at 34.  Although the Court carefully explained the specific facts missing from the Complaint to allege such a claim, *id.* at 34-35, Plaintiffs' Amended Complaint does not plead them.

First, Plaintiffs plead no facts to support their conclusory assertion that "Plan participants have rolled significant assets out of the Plan and into Voya-managed accounts and financial products."  Am. Compl. ¶ 255.  Rather, Plaintiffs allege solely that (i) Voya offers "Retirement Consulting," which is "targeted" towards participants who are retiring or changing jobs to induce them to rollover funds out of the Plan and into IRA products offered by Voya affiliates, Am. Compl. ¶ 265, and (ii) that the Plan's Annual Reports to DOL (Form 5500) show "hundreds of millions of dollars in payments to participants including rollovers."  Am. Compl. ¶ 270.  From this, Plaintiffs assert "[i]t is reasonable to infer" that Voya used participant data "to induce the transfer of millions of dollars of rollovers into its proprietary products each year."  *Id.*

To make this causal connection, however, Plaintiffs have nothing more than pure speculation.  Plaintiffs do not allege anywhere in the Amended Complaint that any (identified) Plan participant actually transferred any funds out of the Plan to a Voya IRA product *as a result of* the alleged targeted marketing by Voya.  Indeed, tellingly, Plaintiffs do not allege that *they*, *themselves*, were ever targeted for or provided such "Retirement Consulting" services by Voya, or that *they, themselves,* rolled over any funds from the Plan and to a "rollover IRA product" offered by Voya affiliates.  Further, Plaintiffs do not attempt to account for any of the myriad other reasons for the payments reported by the Plan--such as the payment of benefits to participants or beneficiaries as a result of participant retirements or deaths; withdrawals by participants or beneficiaries for unreimbursed medical bills, health insurance premiums, tax payments, first-time home purchases, higher education expenses, or separations from service; or rollovers by participants as a result of job changes or for investment, tax, or estate-planning reasons.  All of these payments were particularly acute during the COVID epidemic beginning in early 2020.  *See* Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. 116–136, § 2200, Mar. 27, 2020, 134 Stat. 281 (permitting qualifying individuals to take coronavirus-related distributions up to $100,000 from eligible retirement plans without 10% early withdrawal penalty).

22

Second, Plaintiffs plead no facts that would show that the Plan has actually suffered a decrease in its bargaining power in the investment market at all--much less as a result of any purported "plan leakage."  *See* Am. Compl. ¶¶ 267-272.  For example, Plaintiffs do not allege the extent or amount of any purported decrease in bargaining power supposedly suffered by the Plan as a result of purported "plan leakage" from Voya's alleged use of Plan participant data for marketing purposes, the point at which the Plan lost any bargaining power, or the size the plan would need to be to enjoy appropriate bargaining power.  Indeed, Plaintiffs' contention that the Plan suffered a substantial (or any) decrease in its bargaining power is belied by Plaintiffs' repeated allegations that throughout the class period the Plan in fact enjoyed "tremendous bargaining power" that enabled it to secure fees that Plaintiff asserts would have been prudent. *See* Am. Compl. ¶ 4 ("Multi-billion dollar defined contribution plans, like the Plan, have tremendous bargaining power to obtain high quality, low-cost administrative, managed account, and investment management services."); ¶ 18 ("As of December 31, 2018, the Plan had over $4.44 billion in assets and 114,254 participants with account balances."); ¶ 19 ("The Plan is among the largest 0.02% of all defined contribution plans in the United States based on plan assets.  Professionals commonly refer to plans of such great size as 'jumbo plans' or 'mega plans.'  The Plan's massive size gives it enormous bargaining power to command very low investment management, managed

account, and recordkeeping fees for its participants."); ¶ 47 ("This is particularly true for multi-billion dollar plans like the Plan, which have the bargaining power to obtain the highest level of service and the very lowest fees."); ¶ 182 ("Jumbo multi-billion dollar plans, such as the Plan, have even greater bargaining power [than 'large retirement plans'].").  Further, Plaintiffs do not allege that absent the alleged "leakage" the Plan could have negotiated any particular transaction or arrangement on more favorable terms than those actually negotiated, much less identify the terms that could have been achieved.

Third, as explained by this Court in its Opinion addressing Plaintiffs' Count IX as pleaded in their original Complaint, "while Plaintiffs claim that Plan participants paid higher fees when investing through non-Plan investment products--which were marketed to them by use of their data--these allegations are vague, general, and conclusory." Opinion at 34-35.  Plaintiffs have done nothing in their Amended Complaint to address these deficiencies.

In particular, as noted by this Court in the Opinion, Plaintiffs "do not allege what Plan participants, *specifically*, paid in fees; instead, they allege, generally, that 'revenue generated by . . . sales [of non-plan products] is significant.' . . .  But they cite nothing particular to the Plan or to Voya." *Id.* at 35 (emphasis in original) (citing Compl. ¶ 232).  Like the original Complaint, Plaintiffs' Amended Complaint remains devoid of any allegations of "what Plan participants,

24

*specifically*, paid in fees," and continues to cite "nothing particular to the Plan or to Voya." *Id*; *see* Am. Compl. ¶¶ 225-40.  Instead, Plaintiffs stick to vague, general, and conclusory allegations that "Participants who opt for individual brokerage accounts with Voya outside the Plan" pay "higher fees" than they pay for in-Plan products, Am. Compl. ¶ 274; that "Voya Financial brokerage accounts also charge higher fees indirectly" because they offer only retail-class shares, *id*. ¶ 275; and that, because they are charged with each new investment, individual transactional fees "can" amount to "significant sums." *Id*. ¶ 276.

Similarly, although this Court also pointed out that Plaintiffs also failed in their first attempt at pleading Count IX to allege that "the non-Plan products purchased performed so poorly that the fees were unjustified," Opinion at 35, the Amended Complaint contains no allegations about the performance of the non-Plan products purchased by Plan participants relative to the fees charged specifically to Plan participants for such products.  *See* Am. Compl. ¶¶ 225-40.

Finally, Plaintiffs' allegations that various entities have entered into settlement agreements that included language limiting use of plan participant data by the recordkeeper, Am. Compl. ¶ 286, are insufficient to allege a plausible claim for breach of fiduciary duty.  The settlement agreements cited by Plaintiffs were not consent decrees, but negotiated settlements of vigorously disputed claims, subject to Federal Rule of Evidence 408.  In each instance, the settling defendants

expressly denied all allegations of wrongdoing, and contended that the subject Plan had been managed, operated, and administered at all relevant times reasonably and prudently and in accordance with ERISA, including the fiduciary duty provisions of ERISA.  *See, e.g.,* Class Action Settlement Agreement, § 13.3, *Troudt v. Oracle Corporation*, CASE #1:16-cv-00175-REB-SKC (D. Col. Feb. 26, 2020) [CM-ECF Doc. 219-1].  Pursuant to federal Rule of Evidence 408, settlement agreements like the ones alleged by Plaintiffs, are "not admissible — on behalf of any party . . . to prove or disprove the validity or amount of a disputed claim . . . ."  Fed. R. Evid. 408(a).  The only exceptions to this rule of non-admissibility are admission of such agreements "for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution."  *Id.* 408(b).

## CONCLUSION

For the foregoing reasons, Count IX of the Amended Complaint should be dismissed.

Dated: October 28, 2022

SEYFARTH SHAW LLP

By: */s/ Alnisa S. Bell*
    Alnisa S. Bell
    620 Eighth Avenue
    New York, New York 10018
    Tel: (212) 218-5500
    Fax: (212) 218-5526
    Email: abell@seyfarth.com

    Ian H. Morrison (*pro hac vice*)
    Ada W. Dolph (*pro hac vice*)
    Sam Schwartz-Fenwick (*pro hac vice*)
    233 S. Wacker Drive, Suite 8000
    Chicago, IL 60606-6448
    Email: imorrison@seyfarth.com
    Email: adolph@seyfarth.com
    Email: sschwartz-fenwick@seyfarth.com

    *Attorney for Defendants ADP*
    *TotalSource Group, Inc., Automatic*
    *Data Processing, Inc., and the ADP*
    *TotalSource Retirement Savings Plan*
    *Committee*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that she electronically filed the foregoing document with the Clerk of the United States District Court for the District of New Jersey using the CM/ECF system on this 28th day of October, 2022, which sent notification of such filing to the following counsel of record:

| | |
|---|---|
| Thomas Michael Kenny, Esq.<br>Spiro Harrison<br>830 Morris Turnpike<br>2nd Floor<br>Short Hills, NJ 07078<br>Email: tkenny@spiroharrison.com<br>*Attorney for Plaintiff* | Eric H. Jaso, Esq.<br>Spiro Harrison<br>363 Bloomfield Avenue, Suite 2C<br>Montclair, NJ 07042<br>Email: ejaso@spiroharrison.com<br>*Attorney for Plaintiff* |
| Kathleen N. Fennelly<br>McElroy, Deutsch, Mulvaney &<br>    Carpenter LLP<br>1300 Mount Kemble Avenue<br>PO Box 2075<br>Morristown, NJ  07962-0161<br>Email: kfennelly@mdmc-law.com<br>*Attorney for Defendant NFP*<br>*Retirement, Inc.* | Thomas R. Curtin<br>McElroy, Deutsch, Mulvaney &<br>    Carpenter LLP<br>1300 Mount Kemble Avenue<br>PO Box 2075<br>Morristown, NJ  07962-2078<br>Email: tcurtin@mdmc-law.com<br>*Attorney for Defendant NFP*<br>*Retirement, Inc.* |
| George C. Jones<br>McElroy, Deutsch, Mulvaney &<br>    Carpenter LLP<br>1300 Mount Kemble Avenue<br>PO Box 2075<br>Morristown, NJ  07962-2078<br>Email:  Email: gjones@mdmc-law.com<br>*Attorney for Defendant NFP*<br>*Retirement, Inc.* | |

*/s/ Alnisa S. Bell*
Alnisa S. Bell

Dated: October 28, 2022