Alnisa Bell
SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York 10018
(212) 218-5500

Ian H. Morrison (*pro hac vice*)
Ada W. Dolph (*pro hac vice*)
Sam Schwartz-Fenwick (*pro hac vice*)
SEYFARTH SHAW LLP
233 South Wacker Drive, Suite 8000
Chicago, Illinois 60606-6448
(312) 460-5000

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| BETH BERKELHAMMER and NAOMI RUIZ, individually and as representatives of a class of participants and beneficiaries on behalf of the ADP TotalSource Retirement Savings Plan,<br><br>   Plaintiffs,<br><br> v.<br><br>ADP TOTALSOURCE GROUP, INC.; AUTOMATIC DATA PROCESSING, INC.; ADP TOTALSOURCE, INC.; ADP TOTALSOURCE RETIREMENT SAVINGS PLAN COMMITTEE; MARK ACQUADRO; ART BAUMANN; PAWAN CHHABRA; MICHAEL EBERHARD; KEISHA NEWELL; BRIAN MICHAUD; JACK DREWRY; and KRISTEN APPLEMAN,<br><br>   Defendants. | Civil Action No.: 2:20-cv-05696-EP-JRA<br><br>**<u>ORDER</u>** |

# [PROPOSED] ORDER GRANTING UNOPPOSED MOTION TO SEAL

Before the Court is Defendants' unopposed motion to seal. The Court having reviewed Defendants' submissions enters the following findings of fact and conclusions of law:

**I.  Findings of Fact.**

1. Defendants seek to seal and/or redact certain documents filed by the Parties in connection with their motions for summary judgment and motions to exclude experts. (Dkt. 278, 280, 282-283, 285, 287, 294, 296, 298, 301, 308, 312, 315, 317).

2. Defendants assert that these documents (identified in Exhibit A to the Declaration of Prakriti Bhatia in support of the motion to seal ("Defendants' Index")) contain sensitive, non-public information regarding the ADP TotalSource Group, Inc. ("ADPTS") Retirement Savings Plan (the "Plan") that would, if released, put ADPTS at a competitive disadvantage, disclose privileged communications and/or disclose private information regarding nonparties.

3. The records before the court on the foregoing motions include hundreds of exhibits regarding the operation of the Plan. (See Dkt. 279-280, 284-285, 295-296, 301, 308, 312, 316-317). Among these exhibits are confidential contracts with Plan service providers, meeting minutes discussing Plan administration, documents governing the Plan's structure and administration, letters seeking reimbursement for

services provided by ADPTS to the Plan, and confidential documents provided to the Plan by service providers reflecting these providers' analysis of the Plan and the investment market.

4.  In the case of the proprietary investment and market analysis provided by NFP, the Plan's investment advisor, ADPTS' agreement with NFP *requires* maintaining confidentiality.

5.  Similarly, the agreement with Voya requires protecting confidential information. (*See* Ex. D19-1 § 11, Dkt. 296-79).

6.  ADPTS takes extensive steps to prevent disclosure of these documents to the public generally and competitors in particular.

7.  Disclosure of these documents on the public docket would damage ADPTS in numerous ways, including by offering competitors a wealth of confidential information regarding multiple facets of Plan design, administration, operation, costs and fees.

8.  Disclosing documents created by service providers pursuant to contracts requiring confidentiality would impede the Plan's ability to obtain necessary services at competitive prices.

9.  Additionally, certain documents reflect salary information regarding ADPTS employees and/or financial information regarding the named plaintiffs in this lawsuit.

10. Making personal information regarding Plaintiffs and non-party ADPTS employees available to the public would improperly invade the personal privacy of these individuals.

11. Further, many of the documents also contain (in whole or in part) legal advice protected by the attorney-client privilege.

12. Revealing privileged information beyond the individuals entitled to review it would waive privilege and offer competitors detailed analyses about the Plan and its operations.

13. Plaintiffs do not oppose the relief that Defendants seek.

## II. Conclusions of Law

### A. Legal Standard

14. A party seeking to seal documents must demonstrate that "good cause" exists for sealing. *Securimetrics, Inc. v. Iridian Techs., Inc.*, No. 03-4394, 2006 WL 827889, at *2 (D.N.J. Mar. 30, 2006). "Good cause exists when a party makes a particularized showing that disclosure will cause a 'clearly defined and serious injury to the party seeking closure." *Id.* (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994)).

15. Courts protect "the confidentiality of business agreements, trade secrets or commercial information" where disclosure … can be used for the improper purpose of causing harm to the litigant's competitive standing in the marketplace."

*Goldenberg v. Indel, Inc.*, No. CIV. 09-5202 JBS/AMD, 2012 WL 15909, at *3 (D.N.J. Jan. 3, 2012); *Hudson Hosp. Opco, LLC v. Aetna Health Inc.*, No. CV224373MEFMAH, 2023 WL 6445840, at *2 & n.2 (D.N.J. May 24, 2023).

16. Courts also protect against public disclosure of personal information, such as "addresses, Social Security numbers, salaries, and other personal information" (including tax details). *Platt v. Freedom Mortg. Corp.*, No. CIV. 10-968 RBK/KMW, 2013 WL 6499252, at *10 (D.N.J. Dec. 11, 2013); *Bah v. Apple Inc.*, No. CV2015018MCAMAH, 2021 WL 4272829, at *3 (D.N.J. Sept. 21, 2021) ("the public has no interest in the personal identifying information Defendants move to seal").

17. Additionally, sealing is appropriate to prevent "disclosure of communications protected by the attorney-client privilege." *United States ex rel. Salomon v. Wolff*, No. 217CV05456JLLCLW, 2022 WL 17327214, at *3 (D.N.J. Mar. 14, 2022).

18. In considering a motion to seal, the Court must "[e]valuate[] each of the factors" set forth in L. Civ. R. 5.3(c)(3) and balance "the specific need for privacy against the general presumption of public access." *Medwell, LLC v. Cigna Corp.*, No. 20-CV-10627-KM-ESK, 2020 WL 7694008, at *3 (D.N.J. Dec. 28, 2020).

19. L. Civ. R. 5.3(c)(3) requires that a party seeking to file materials under seal to describe: (a) the nature of the materials to be kept confidential; (b) the

legitimate private or public interests which warrant confidentiality; (c) the clearly defined and serious injury that would result should the order not be entered; (d) why a less restrictive alternative to the relief sought is not available, (e) any prior order sealing the same materials in the pending action; and (f) the identity of any party or nonparty known to be objecting to the sealing request. The Court finds that Defendants have made the necessary showing.

### B. *Defendants Proprietary Information Shall Be Sealed.*

#### i. *Nature of the Documents*

20. The first factor that courts must consider under Rule 5.3(c)(3) is the nature of the materials sought to be sealed, *i.e.* whether the documents "involve [ ] matters of legitimate public concern." *Medwell*, 2020 WL 7694008, at *3.

21. "Courts have recognized that the confidentiality of business agreements, trade secrets or commercial information are a legitimate private interest and the disclosure of this information can be used for the improper purpose of causing harm to the litigant's competitive standing in the marketplace." *Goldenberg*, 2012 WL 15909, at *3; *Hudson Hosp.*, 2023 WL 6445840, at *2 & n.2 (granting motion to seal because "the terms of the benefits plans are the result of private contractual negotiations" and "[i]f revealed, the public, and Defendants' competitors, would have access to the 'specific packages or benefit offerings that Defendants make available to particular customers'").

22. The Court finds that the substance of the documents for which Defendants assert a proprietary interest is not of public concern because the documents are highly confidential documents (such as service contracts, meeting minutes, Plan charters, reimbursement letters, and analyses from service providers) that pertain to the operation, structure, and costs of the Plan, as well as providing detailed insights into the deliberations behind a multitude of Plan decisions.

23. Additionally, certain of the documents are expert reports (including exhibits) and deposition transcripts that analyze and/or discuss these confidential documents.

24. These materials do not concern the public generally, and their disclosure would place ADPTS at a competitive disadvantage by disclosing the inner workings of the Plan to competitors that offers similar products. *see Medwell*, 2020 WL 7694008, at *3; *Hudson Hosp.*, 2023 WL 6445840, at *2 n.2 ("Defendants' Certification and Index detailing the confidential nature of the documents and statement averring that this is not a matter of public concern, as well as Plaintiffs failure to rebut the same, weighs in favor of sealing the documents.").

    ii. *Interests Warranting Confidentiality*

25. The second factor that the Court must examine weighs legitimate private interests against the public's general interest in disclosure, as well as the public's specific interest in information involving "matters of legitimate public

concern." *Castellani v. City of Atl. City,* 2015 WL 1578990, at *7 (D.N.J. 2015).

26. Courts in this district have routinely "recognized that the confidentiality of business agreements, trade secrets or commercial information are a legitimate private interest and the disclosure of this information can be used for the improper purpose of causing harm to the litigant's competitive standing in the marketplace." *Goldenberg*, 2012 WL 15909, at *3.

27. In the benefit plan context, specifically, this includes protecting confidential and proprietary documents setting forth details regarding how a plan operates (including information that is confidential based on contractual relationships with non-parties). *Hudson Hosp.*, 2023 WL 6445840, at *2 & n.2 (finding legitimate privacy interest as to documents "reflect[ing] important, commercially sensitive, highly confidential, and proprietary product details regarding the terms of plans that Aetna administers, as well as the structure and operation of those plans"); *Medwell*, 2020 WL 7694008, at *3 (declaration that "information is proprietary, confidential, and the result of 'private contractual negotiations between Cigna and its clients'" "articulated … legitimate private interest in seeking to seal the Exhibits").

28. The exhibits here meet this standard because they provide extensive (and indeed comprehensive) information about all aspects of the Plan's operations and ADPTS takes extensive steps to prevent disclosure to the public generally and

8

competitors in particular.

29. Moreover, public disclosure of *any* of this information is particularly damaging in the small field of multiple employer 401(k) plans ("MEPs") sponsored by professional employer organizations ("PEOs"), as the differentiating details between ADPTS and its competitors are vital to allow ADPTS to keep its edge in a highly competitive environment.

30. Additionally, the factors weighing against the interest of privacy to militate in favor of publication—such as public safety, greater fairness, and efficiency—are not at issue here. *See Pansy*, 23 F.3d at 787–89.

### iii. *Clearly Defined and Serious Injury*

28. Defendants have likewise demonstrated "clearly defined and serious injury" that would occur if the documents were publicly available

31. "Where the moving party has demonstrated [that] disclosure would result in a clearly defined and serious loss of a competitive business advantage, factor three weighs in favor of protecting the disputed document." *Medwell*, 2020 WL 7694008, at *4 (quoting *Goldenberg*, 2012 WL 15909, at *4 and holding that declaration that "information 'if made public, would cause harm to Cigna, as it would place Cigna [ ] at a competitive disadvantage if one of [Cigna's] competitors obtained the information in these [Exhibits]' … demonstrated … clearly defined and serious injury").

9

32. The record demonstrates that disclosure of the confidential Plan documents would result in serious injuries, including by allowing competitors in a small field to have extensive access to all manner of details regarding Plan operations and strategy including as to staffing decisions, job duties, salaries, investment strategies, and costs of Plan services.

33. Having comprehensive access to such extensive details would allow a competitor to duplicate the Plan's structure and offerings and undercut fees, thus poaching clients from ADPTS and harming the competitive advantage presently held by ADPTS.

    iv. *Less Restrictive Alternative*

34. "As to the fourth factor, the Court examines whether the moving party's request to seal is overbroad. A motion to seal is overbroad where the moving party's interest 'can be adequately served by filing a more narrowly tailored' motion to seal." *Medwell*, 2020 WL 7694008, at *4.

35. The Court finds there is no less restrictive alternative to sealing the exhibits in their entirety because pervading these documents is confidential information on all manner of sensitive topics regarding Plan operations and strategy.

36. For example, the meeting minutes (comprising 122 of the documents at issue) contain extensive discussions about all aspects of the Plan's administration and investment approaches, as well as privileged information throughout.

37. Similarly, the Plan documents (such as Committee Charters, investment policy statements, and reimbursement letters) are full of information that would allow a competitor to replicate the Plan's design and implementation.

38. Simply redacting portions of these exhibits would both be impractical and insufficient to ensure that sensitive and confidential information is shielded from competitors. *See Hudson Hosp.*, 2023 WL 6445840, at *2 n.2 (sealing all exhibits was "reasonable and most practical given the volume of materials filed" where documents totaled approximately 586 pages and that "[i]t would be difficult to discern which pages, or portions of pages, should be redacted versus left alone").

39. As to the parties' statements of material facts (Dkt. 278, 282-283, 287, 294, 298, 315), Defendants only seek to redact those portions that discuss the substance of the exhibits in Defendants' Index.

40. Sealing the exhibits, while allowing competitors to review hundreds of pages of in-depth discussion regarding their content is insufficient to prevent the harms discussed above.

41. Further, by only redacting discussions as to the sealed exhibits (rather than seeking to seal the statements of facts in their entirety) and not seeking to redact the summary judgment briefs at all, Defendants have already proffered a less-restrictive alternative to comprehensive sealing.

42. The Court thus finds that no less-restrictive alternative to sealing exists.

### C. *Personal And Privileged Information Shall Be Sealed.*

#### i. *Nature of the Documents*

43. The Court further finds that sealing is proper as to the exhibits that reflect personal information regarding Plaintiffs and non-parties, as well as exhibits containing information protected by attorney-client privilege.

44. On the first factor, the public does not have an interest in the disclosure of personal information, such as "addresses, Social Security numbers, salaries, and other personal information" (including tax details). *Platt*, 2013 WL 6499252, at *10 ("due to the privacy expectations of these individuals, especially those who are not parties, injury would result if they were made publicly available"); *Bah*, 2021 WL 4272829, at *3 ("public has no interest in the personal identifying information Defendants move to seal").

45. And "[i]t is well-settled that disclosure of communications protected by the attorney-client privilege constitutes a serious injury for which the sealing of Court records is an appropriate remedy." *Salomon*, 2022 WL 17327214, at *3.

46. As noted above, a variety of the documents Defendants seek to seal (such as the reimbursement letters, deposition excerpts, and account statements) contain detailed personal information (including salary and investment information) regarding Plaintiffs and non-party employees of ADPTS.

47. Many exhibits (including meeting minutes and memoranda from

counsel) also contain privileged legal advice shielded from disclosure to the public at large.

48. Neither of these categories of documents concerns the public, so the first factor weighs in favor of sealing these documents. *Bah*, 2021 WL 4272829, at *3 ("public has no interest in the personal identifying information Defendants move to seal"); *Pal v. Univ. of Med. & Dentistry of N.J.*, No. 2:11-CV-06911-SRC, 2013 WL 4607160, at *2 (D.N.J. Aug. 29, 2013) ("[c]ourts have long recognized the attorney-client privilege as one of the few exceptions to the public's right to every man's evidence").

### ii. *Interests Warranting Confidentiality*

49. The personal information and privileged documents meet the second confidentiality factor.

50. The Court must weigh legitimate private interests against the public's general interest in disclosure, as well as the public's specific interest in information involving "matters of legitimate public concern." *Castellani v. City of Atl. City,* 2015 WL 1578990, at *7 (D.N.J. 2015).

51. The personal and privileged information contained in Defendants' Index both pertain to well-established privacy interests, so this factor likewise supports sealing. *Platt*, 2013 WL 6499252, at *10 ("due to the privacy expectations of these individuals, especially those who are not parties, injury would result if

[private information] were made publicly available"); *Salomon*, 2022 WL 17327214, at *3 ("well-settled that disclosure of communications protected by the attorney-client privilege constitutes a serious injury for which the sealing … is an appropriate remedy").

### iii. *Clearly Defined and Serious Injury*

52. Defendants have also demonstrated "clearly defined and serious injury" that would occur if personal information and privileged legal advice became publicly available.

53. Disclosure of Plaintiffs' and third parties' personal salary and financial information would vitiate the privacy interests of those individuals. *Platt*, 2013 WL 6499252, at *10 ("due to the privacy expectations of these individuals, especially those who are not parties, injury would result if [private information] were made publicly available").

54. Disclosing the privileged information present throughout the exhibits beyond the parties to this action would waive privilege, allowing competitors access to all manner of legal advice regarding the Plan's operation. *See Salomon*, 2022 WL 17327214, at *3 ("well-settled that disclosure of communications protected by the attorney-client privilege constitutes a serious injury for which the sealing … is an appropriate remedy").[1]

---

[1] The Court finds that Defendants' production of these documents to Plaintiffs did

### iv. *Less Restrictive Alternative*

55. No less-restrictive alternative to sealing exists as to the personal or privileged information.

56. The personal information regarding Plaintiffs and third parties is found in numerous locations throughout various exhibits, deposition excerpts and reimbursement letters. *See Onex Credit Partners, LLC v. Atrium 5 LTD.*, No. CV 13-5629 (JMV), 2017 WL 4284490, at *3 (D.N.J. Sept. 27, 2017) ("No less restrictive alternative [to sealing personal financial information] [wa]s available.").

57. And as to the privileged information, "where confidential, privileged communications are the subject of a motion to seal, there is no less restrictive alternative than to seal the communications to avoid public disclosure." *Salomon*, 2022 WL 17327214, at *4.

---

not waive privilege because Plan participants are entitled to review the legal advice contained within them pursuant to the fiduciary exception to the attorney-client privilege, but the documents are privileged as to all other individuals. *See Wachtel v. Health Net, Inc.*, 482 F.3d 225, 233 (3d Cir. 2007) (plan participants are in a sense "the 'real' clients" with respect to legal advice concerning plan administration and therefore entitled to disclosure); *Phillips v. Boilermaker-Blacksmith Nat'l Pension Tr.*, No. 19-cv-02402-TC-KGG, 2021 U.S. Dist. LEXIS 273637, at *3 (D. Kan. May 21, 2021) ("Defendants have provided the subject document to Plaintiffs … only … via the fiduciary exception. The publication of this information to third parties could jeopardize this privilege in ways that disclosure to the Plaintiffs does not.") (citations omitted). Defendants have not consented to broader disclosure, which is a prerequisite to waiver when a privilege is shared by multiple parties with a common interest in the advice. *Munich Reinsurance Am., Inc. v. Am. Nat. Ins. Co.*, No. CIV.A. 09-6435 FLW, 2011 WL 1466369, at *22 (D.N.J. Apr. 18, 2011) ("[w]aiving the joint-client privilege requires the consent of all joint clients").

58. Beyond this, the personal and privileged information is also found throughout the documents noted above that contain confidential and proprietary information.

59. This further counsels against a less-restrictive method than sealing.

60. Accordingly, the exhibits containing privileged and personal information should be sealed in their entirety.

*D. Other Sealing Factors.*

61. The final factors (prior orders and opposition to sealing), L. Civ. R. 5.3(c)(3)(e), (c)(3)(f), favor granting the motion as to all documents because there have been no prior sealing orders in this matter, Plaintiffs do not oppose this motion, and the Court is unaware of any other person(s) opposed to sealing.

In light of the foregoing findings of fact and conclusions of law, Defendants have shown good cause to file the documents in Defendants' Index under seal. Accordingly, **IT IS** on this _30th_ day of ___June_____, 2025, **HEREBY ORDERED** that Defendants' Motion to Seal is **GRANTED AS REQUESTED**.

_____
Honorable José R. Almonte
United States Magistrate Judge