<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BETH BERKELHAMMER, NAOMI RUIZ,<br><br>Plaintiffs,<br><br>v.<br><br>ADP TOTALSOURCE GROUP, INC, *et al.*,<br><br>Defendants. | No. 20-cv-5696 (EP) (JRA)<br><br>**MEMORANDUM ORDER** |

**PADIN, District Judge.**

On December 26, 2024, the Hon. José R. Almonte, U.S.M.J, granted ADP TotalSource Group, Inc., ADP TotalSource Group, Inc., ADP TotalSource Retirement Savings Plan Committee, Automatic Data Processing, Inc., and NFP Retirement, Inc.'s (collectively, "Defendants") motion to strike Plaintiffs Beth Berkelhammer and Naomi Ruiz's (collectively, "Plaintiffs") jury demand, D.E. 237 ("Motion to Strike Jury Demand").  D.E. 265 (the "Order").  Plaintiffs now appeal that decision.  D.E. 266 (the "Appeal").  Defendants oppose the Appeal.  D.E. 267 ("Opposition" or "Opp.").  Plaintiffs did not reply.  *See* Dkt.

The Court decides the Appeal without oral argument.  *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b).  Having considered the Appeal, the parties' submissions, and all relevant items on the docket, the Court concludes that Judge Almonte's Order is not clearly erroneous nor contrary to law.  Accordingly, for the reasons stated herein, the Court will **DENY** the Appeal and **AFFIRM** Judge Almonte's Order.  The Court will also **DENY** Plaintiffs' request, in the alternative, that the Court impanel an advisory jury.

I.  **BACKGROUND**[1]

Plaintiffs, acting individually and as representatives of a class of participants and beneficiaries of the ADP TotalSource Retirement Savings Plan (the "Plan"), allege that Defendants—acting as fiduciaries—violated the Employee Retirement Income Security Act of 1974 ("ERISA"). *See* D.E. 223 ("Second Am. Compl."). Plaintiffs allege that Defendants breached their fiduciary duties under ERISA when they mismanaged the Plan by: (1) paying themselves from Plan assets, (2) selecting and retaining imprudent investments in the Plan, (3) causing the Plan to pay excessive managed account fees, and (4) allowing the Plan's service providers to collect and use confidential Plan participant data for profit. *Id.* ¶¶ 89-322.

Plaintiffs bring nine causes of action against Defendants based on these alleged breaches: the first eight under ERISA § 502(a)(2) (codified at 29 U.S.C. § 1132(a)(2)) and the ninth under ERISA § 502(a)(3) (codified at 29 U.S.C. § 1132(a)(3)). *Id.* ¶¶ 328–93.[2] To remedy these alleged breaches, Plaintiffs ask the Court to, *inter alia*, order Defendants to "make good to the Plan all losses to the Plan resulting from each breach of fiduciary duty, and to otherwise restore the Plan to the position it would have occupied but for the breaches of fiduciary duty." *Id.* at 178.

Plaintiffs demand a jury trial pursuant to the Constitution of the United States and Rule 38 of the Federal Rules of Civil Procedure. *Id.* ¶ 394. On May 5, 2024, Defendants moved to strike

---

[1] The Court assumes the parties' familiarity with the background of this case. Therefore, the background section is limited to facts relevant to the Appeal.

[2] "Count I alleges prohibited self-dealing transactions in violation of 29 U.S.C. § 1106(b); Count II alleges transactions in violation of 29 U.S.C. § 1106(a); Counts III-V allege breaches of fiduciary duty in violation of 29 U.S.C. §1104(a)(1); Count VI alleges prohibited transactions in violation of 29 U.S.C. § 1106(a)(1); Count VII alleges breach of fiduciary duty in violation of 29 U.S.C. § 1104(a)(1); Count VIII alleges failure to monitor fiduciaries; and Count IX [requests] other equitable remedies as provided under 29 U.S.C. § 1132(a)(3)." Order at 2 n.3 (citing Second Am. Compl.).

Plaintiffs' jury demand pursuant to Rules 12(f) and 39(a) of the Federal Rules of Civil Procedure. Motion to Strike Jury Demand. Plaintiffs opposed Defendants' Motion to Strike Jury Demand, D.E. 238, and Defendants replied, D.E. 239. On December 26, 2024, Judge Almonte granted Defendants' Motion to Strike Jury Demand, finding that the relief Plaintiffs seek in this action under ERISA § 502(a)(2) does not entitle Plaintiffs to a jury trial under the Seventh Amendment to the United States Constitution. Order. In his Order, Judge Almonte declined to address Plaintiffs' request that an advisory jury be impaneled should the Court find that Plaintiffs did not have a constitutional right to a jury. *Id.* at 8. This Appeal followed.

## II.     LEGAL STANDARD

"A United States [m]agistrate [j]udge 'may hear and determine any [non-dispositive] pretrial matter pending before the [C]ourt." *Cardona v. General Motors Corp.*, 942 F. Supp. 968, 971 (D.N.J. 1996) (quoting 28 U.S.C. § 636(b)(1)(A)); *see also* Fed. R. Civ. P. 72(a). "On appeal from such an order, the scope of this Court's review is narrow." *Allen v. Banner Life Ins. Co.*, 340 F.R.D. 232, 236 (D.N.J. 2022). A district court may only "modify or set aside any part of the [non-dispositive] order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). The "clearly erroneous" standard applies to findings of fact, while the "contrary to law" standard applies to matters of law. *Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 91 (3d Cir. 1992). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). "A ruling is 'contrary to law' if the magistrate judge has misinterpreted or misapplied applicable law." *Pharm. Sales & Consulting Corp. v. J.W.S. Delavau Co.*, 106 F. Supp. 2d 761, 764 (D.N.J. 2000) (internal quotation marks added).

3

"The burden of demonstrating that [an] order [is] clearly erroneous or contrary to law falls on the party who has filed the notice of appeal." *Champion Painting Specialty Servs. Corp. v. Del. River Port Auth.*, 658 F. Supp. 3d 241, 247 (D.N.J. 2023) (citing *Travelers Indem. Co. v. Dammann & Co., Inc.*, 529 F. Supp. 2d 752, 758–59 (D.N.J. 2008)).

## III. DISCUSSION

Plaintiffs argue that Judge Almonte erred when he struck their jury demand after finding that Plaintiffs did not have a constitutional right to a jury trial on their claims under ERISA § 502(a)(2). Appeal. The Court disagrees and concludes that Plaintiffs have not met their burden of demonstrating that Judge Almonte's decision to strike Plaintiffs' jury demand is contrary to law. The Court will also deny Plaintiffs' request to impanel an advisory jury, which Judge Almonte declined to decide. *See* Appeal at 31–34.

### A. Plaintiffs Have Not Met Their Burden of Demonstrating that the Order Is Contrary to Law

Judge Almonte held that Plaintiffs' claims and the remedies they seek are equitable under binding Third Circuit and Supreme Court precedent. Order. Judge Almonte accordingly determined that Plaintiffs do not have a right to a jury trial under the Seventh Amendment of the United States Constitution. *Id.* The Court concurs.

The Seventh Amendment of the United States Constitution provides that "[i]n Suits at common law . . . the right of trial by jury shall be preserved." In a suit at common law, legal rights—not equitable rights—are at issue. *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 564 (1990); *see Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 53 (1989) ("'Suits at common law'. . . refer to 'suits in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered.'" (quoting *Parsons v. Bedford*, 3 Pet. 433, 447 (1830))).

4

Accordingly, as Judge Almonte explained, "claims equitable in nature do not entitle plaintiffs to jury trials." Order at 3 (citing *Granfinanciera*, 492 U.S. at 41–42).

When considering whether a claim is legal or equitable, courts engage in a two-pronged analysis, considering (1) "the nature of the issues" and (2) "the remedy sought." *Chauffers*, 494 U.S. at 565. The second prong "is the more important in [a court's] analysis" of the question. *Id.* (citing *Granfinanciera*, 492 U.S. at 42).

Here, Plaintiffs have brought eight claims under ERISA § 502(a)(2) and one under ERISA § 502(a)(3). Appeal at 5–6. Plaintiffs concede that "only 'equitable relief'" would be available for their claim under ERISA § 502(a)(3). *Id*. at 6. Plaintiffs also concede that, even for their claims under ERISA § 502(a)(2), the first prong of the analysis—the nature of the issues involved—weighs in favor of striking the jury demand because "actions for breach of trust and fiduciary duties historically are equitable in nature." *Id.* at 11.

Accordingly, the question before this Court is whether Judge Almonte's conclusion regarding the second prong of the analysis—that the remedies Plaintiffs seek under ERISA § 502(a)(2) are equitable such that Plaintiffs are not entitled to a trial by jury—is contrary to law. Plaintiffs primarily argue that Judge Almonte erred in: (1) finding that *Pane v. RCA Corp.*, 868 F.2d 631 (3d Cir. 1989) was "binding precedent that actions under [ERISA] § 502(a)(2) are not entitled to jury trials," Order at 8; and (2) relying on the Supreme Court's decision in *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011), rather than other Supreme Court decisions, in finding that Plaintiffs seek only equitable remedies, Order at 5–8. *See* Appeal. The Court considers each of Plaintiffs' arguments in turn and finds that Plaintiffs have not met their burden to establish that Judge Almonte misapplied or misinterpreted applicable law.

5

*1.    Judge Almonte's application of Pane is not contrary to law*

Plaintiffs contend that the Third Circuit's decision in *Pane* "is not controlling here because it did not squarely address whether [ERISA § 502(a)(2)] claims seeking to recover 'losses to the plan' under [29 U.S.C.] § 1109(a) fall within the Seventh Amendment's guarantee." Appeal at 15.  The Court, however, agrees with Judge Almonte that *Pane* is binding precedent requiring that the Court find that Plaintiffs do not have a jury trial right under ERISA § 502(a)(2).

ERISA § 502(a)(2) allows suits to be brought "for appropriate relief under section 1109." 29 U.S.C. § 1109(a), in turn, provides for, *inter alia*, the recovery of "any losses to [a] plan resulting from" a breach of fiduciary duty under ERISA and states that the person breaching a duty "shall be subject to . . . equitable or remedial relief as the court may deem appropriate . . . ."  Plaintiffs analyze ERISA's statutory language and argue that the "remedial relief" available under 29 U.S.C. § 1109(a) includes legal relief such that ERISA § 502(a)(2), in turn, authorizes legal relief.  Appeal at 16–19.  But, as Judge Almonte correctly pointed out, *Pane* "squarely rejected that argument."  Order at 4–5.  In conducting its own analysis of ERISA's text, the Third Circuit held in *Pane* that "Section 502(a)(2) simply refers to 'appropriate relief under section 1109,' and there is no reason to attribute to Congress an intention, inconsistent with the rest of section 502(a), to authorize legal rather than equitable relief."  868 F.2d at 637.  The Third Circuit "conclude[d], therefore, that the trial court did not err in striking Pane's demand for a jury trial on his section 502(a) ERISA claims." *Id.*  Because the Third Circuit expressly determined in *Pane* that no right to a trial by jury exists for claims under ERISA § 502(a)(2), Plaintiffs have failed to establish a right to a jury under that section.  *See Alexander v. Primerica Holdings, Inc.*, 819 F. Supp. 1296, 1305 (D.N.J. 1993) ("The Circuit has expressly determined that, for each of [ERISA §§ 502(a)(1)(B), 502(a)(2), 502(a)(3)(A) and 502(a)(3)(B)], no right to a trial by jury exists."); *Narducci v. Aegon USA, Inc.*, No. 10-955,

2010 WL 5325643, at *4 (D.N.J. Dec. 15, 2010) ("The Third Circuit has held that claims under § 502(a) of ERISA are equitable in nature, and thus there is no constitutional right to a jury trial.").[3]

While Plaintiffs claim that *Pane* does not control because the *Pane* court "explicitly refused to consider whether the plaintiff had a constitutional (as opposed to statutory) right to a jury trial," Appeal at 14–15, the Court finds that Plaintiffs' reading of *Pane* is itself inconsistent with other Third Circuit precedent. In *Cox v. Keystone Carbon Co.*, for instance, the Third Circuit (1) explicitly found that the plaintiff's "claim that the Seventh Amendment entitle[d] him to a jury trial ha[d] been dealt a fatal blow by earlier decisions of this court," including *Pane*, (2) held that "[a]ll panels of [the Third Circuit] [were] bound to the holding" in *Pane*, and (3) specifically relied on *Pane* to reject the plaintiff's argument that a legal remedy was created through ERISA § 502(a). 894 F.2d 647, 650 (3d Cir. 1990). This Court will follow Third Circuit's interpretation of its own precedent and therefore also finds that *Pane* controls the issue here. *See also Motor Carriers Lab. Advisory Council v. Trucking Mgmt., Inc.*, 731 F. Supp. 701, 703 (E.D. Pa. 1990) (relying in part on *Pane*'s holding that claims under ERISA § 502(a)(2) were "equitable in nature and, therefore, no right to a jury trial exist[ed]").[4]

The Court further agrees with Judge Almonte's conclusion that a line of cases from the Second Circuit (and a few other district courts) finding a right to a jury trial under ERISA §

---

[3] The Court also rejects Plaintiffs' argument that *Pane* does not control because "[t]he claims in *Pane* were completely unlike those here." Appeal at 15–16. It matters not that the *Pane* plaintiff brought an individual claim for employment discrimination and retaliation instead of seeking compensation for retirement plan losses as Plaintiffs do here; the *Pane* court's interpretation of and decision regarding ERISA § 502(a)(2) did not depend on—and was not impacted by—the specific nature of the claims at issue. *See Pane*, 868 F.2d at 637.

[4] Plaintiffs' apparent dissatisfaction with the depth and breadth of the *Pane* court's statutory analysis, *see* Appeal at 15–19, does not compel a different conclusion. Absent the Third Circuit changing its position that no jury right exists under ERISA § 502(a)(2) or clear intervening Supreme Court precedent, *see infra* Section I.B, this Court is bound by *Pane*.

7

502(a)(2) "cannot override the Third Circuit's binding precedent that actions under [ERISA] § 502(a) are not entitled to jury trials," Order at 8, because, "whatever the merits of the Second Circuit's holding, no opinion from the Supreme Court has held specifically that a jury trial right exists under" ERISA § 502(a) "and the Third Circuit court of appeals has not yet changed its position that no jury trial is required in suits under" ERISA § 502(a)(2). *Roadarmel v. Metro. Life Ins. Co.*, No. 09-194, 2009 WL 10715628, at *1 (M.D. Pa. Apr. 20, 2009) (finding that the district court was bound by Third Circuit precedent holding that no jury trial right existed under ERISA § 502(a)(1)(B)). "Accordingly, the law in this Circuit is that [P]laintiff[s] ha[ve] no right to a jury trial under these circumstances." *Id.*; *see also Kamal v. J. Crew Grp., Inc.*, 416 F. Supp. 3d 357, 361 (D.N.J. 2019) ("A circuit split between our Court of Appeals and the courts of appeals for other circuits does not make Third Circuit precedent any less binding.").[5]

2. *Judge Almonte's reliance on Amara is not contrary to law*

Plaintiffs next argue that Judge Almonte incorrectly relied on the Supreme Court's decision in *Amara* in concluding that the monetary relief Plaintiffs seek is a form of equitable relief. *See* Appeal at 6, 23–28. The Court disagrees and holds that Judge Almonte's reliance on *Amara* is not contrary to law for two interconnected reasons: (1) because the line of Supreme Court cases Plaintiffs cite as inconsistent with *Amara* is distinguishable and, in any event, that line of cases has not overturned *Pane*, and (2) because, even assuming *arguendo* that *Pane*'s holding that there is

---

[5] Moreover, as Defendants note, this line of cases is largely based on *Pereira v. Farace*, 413 F.3d 330 (2d Cir. 2005), a case which the Southern District of New York has since cautioned—in a case also cited by Plaintiffs, *see* Appeal at 12—"may have over-read *Great-West* [*& Annuity Insurance Co. v. Knudson*, 534 U.S. 204 (2002)] in applying its dictum to the issue of the right to trial by jury." *Cunningham v. Cornell Univ.*, No. 16-6525, 2018 WL 4279466, at *4 (S.D.N.Y. Sept. 6, 2018). The *Cunningham* court, however, was bound by its Circuit precedent "unless and until the case is overruled or clear Supreme Court precedent intervenes." *Id.*; *see* Opp. at 16–17 & n.4.

8

no right to a jury trial under ERISA 502(a)(2) does not control, the Court finds that the remedy Plaintiffs seek is equitable.

Plaintiffs maintain that the monetary damages they seek—that Defendants (acting as Plan fiduciaries) "make good to the Plan all losses resulting from each breach of fiduciary duty, and to otherwise restore the Plan to the position it would have occupied but for the breaches of fiduciary duty," Second Am. Compl. at 178—are "the classic form of legal relief." Appeal at 11. Judge Almonte rejected that argument, relying on the Supreme Court's instruction in *Amara* that "the fact that . . . relief takes the form of a money payment does not remove it from the category of traditionally equitable relief." Order at 6 (quoting *Amara*, 563 U.S. at 441). The Court agrees with Judge Almonte that Plaintiffs' requested relief is equitable.

As the *Amara* court went on to explain:

> Equity courts possessed the power to provide relief in the form of monetary "compensation" for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment. Indeed, prior to the merger of law and equity this kind of monetary remedy against a trustee, sometimes called a "surcharge," was "exclusively equitable." The surcharge remedy extended to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary.

563 U.S. at 441–42 (citation modified). Other courts applying *Amara* to strike jury demands for claims arising under ERISA § 502(a)(2)—like those at issue here—have further explained that this "surcharge" remedy is one that is "equitable *in character* and enforceable . . . in a court exercising equity powers." *See, e.g.*, *Pledger v. Reliance Tr. Co.*, No. 15-4444, 2017 WL 11568409, at *4 (N.D. Ga. Nov. 7, 2017) (quoting Restatement (Third) of Trusts § 95 (emphasis added)). In line with "a majority of district courts considering ERISA claims against fiduciaries," the Court accordingly holds that the compensation Plaintiffs seek from Defendants—acting as Plan fiduciaries—for losses resulting from Defendants' breaches of their fiduciary duties is akin to a

9

"surcharge" and is therefore equitable relief. *See Harmon v. Shell Oil Co.*, No. 20-21, 2023 WL 2474503, at *3 (S.D. Tex. Mar. 13, 2023) (collecting cases).

The Court is unconvinced by Plaintiffs' discussion of a series of Supreme Court cases—beginning with *Mertens v. Hewitt Associates*, 508 U.S. 248 (1993)—they claim limit the application of *Amara*. *See* Appeal at 25–28. *First*, quoting *Mertens*, Plaintiffs argue that the Supreme Court has "made clear that ERISA claims seeking 'monetary relief for all losses [a] plan sustained as a result of the alleged breach of fiduciary duties' are claims for 'nothing other than compensatory damages'—'the classic form of legal relief.'" Appeal at 1 (quoting 508 U.S. at 255). *Second*, quoting *Great-West*, Plaintiffs contend that "[f]or an ERISA claim to be considered equitable, 'the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession.'" Appeal at 1 (quoting 534 U.S. at 205). And *finally*, Plaintiffs argue that in *Montanile v. Board of Trustees of National Elevator Industries Health Benefit Plan*, the Supreme Court "dismissed *Amara*'s discussion of equitable relief as dicta, reiterating that the 'interpretation of "equitable relief"' set forth in *Mertens* and *Great-West* remained in force." Appeal at 27–28 (quoting 577 U.S. 136, 148 (2016)).[6]

The Court agrees with Defendants that these cases cited by Plaintiffs are distinguishable, as they all involve claims against non-fiduciaries—a distinction the *Amara* court itself considered "critical." *See* Opp. at 14; *see Amara*, 563 U.S. at 441. In considering the nature of relief sought

---

[6] Plaintiffs also cite two other Supreme Court cases as part of the line of cases beginning with *Mertens* that they claim support their interpretation of the nature of remedies here: *US Airways, Inc. v. McCutchen*, 569 U.S. 88 (2013) and *Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 U.S. 356 (2006). *See* Appeal at 9. Because Plaintiffs focus on *Mertens*, *Great-West*, and *Montanile* in their Appeal, *see* Appeal at 25–28, the Court will do the same. For the avoidance of doubt, however, the Court notes that its rejection of Plaintiffs' interpretation of *Mertens*, *Great-West*, and *Montanile* also applies to *McCutchen* and *Sereboff*.

10

against the fiduciary defendants, the *Amara* court went so far as to state that, "insofar as an award of make-whole relief is concerned, the fact that the defendant in this case, unlike the defendant in *Mertens,* is analogous to a trustee makes a *critical difference*." 563 U.S. at 442 (emphasis added). In *Amara*, the Supreme Court extensively discussed *Mertens* and *Great-West* before making this fiduciary versus non-fiduciary distinction, indicating that its discussion of "surcharge" in cases against fiduciaries is in fact consistent with *Merten*s and *Great-West*. *See* 563 U.S. at 438–42. And, while *Montanile* did specify in a footnote that the court's interpretation of equitable relief in *Mertens* and *Great-West* remained in force,

> *Montanile* did not say *Amara* had been inconsistent with the Court's previous decisions. Nor did it say the Court was now adopting an approach contrary to *Amara*. Instead, *Montanile* rejected a litigant's broad reading of *Amara* that would have "all but overrul[ed]" *Mertens* and *Great-West*, emphasizing that Amara "reaffirmed" the traditional equitable limitations covering "a lien or a constructive trust" that drove the Court's decision in *Montanile*. *See Montanile*, 577 U.S. at 148 n.3.
>
> Viewed in this light, *Amara*'s explanation of why its discussion of surcharge was consistent with *Mertens* covers *Great-West . . .* and *Montanile* as well. As *Amara* noted, surcharge was not available against just anyone. Rather, surcharge only "extended to a breach of trust committed *by a fiduciary* encompassing any violation of a duty imposed upon that fiduciary," which is why "the fact that the defendant in [*Amara*], unlike the defendant in *Mertens*, [was] analogous to a trustee ma[de] a critical difference." 563 U.S. at 442.

*Rose v. PSA Airlines, Inc.*, 80 F.4th 488, 507 (4th Cir. 2023) (Heytens, J., concurring in part and dissenting in part), *cert. denied*, 144 S. Ct. 1346 (2024).[7]

---

[7] The Court recognizes that the majority in *Rose*—a non-binding Fourth Circuit case—did find that "*Montanile*'s approach—which is really *Mertens'*s and *Great-West'*s approach—is inconsistent with *Amara*'s approach." *Id.* at 503. This Court, however, finds the majority's reasoning unconvincing for the reasons Judge Heytens set forth above. Moreover, the Fourth Circuit had itself previously followed *Amara* after *Montanile* came down, *see Peters v. Aetna Inc.*, 2 F.4th 199, 220 (4th Cir. 2021), before abruptly changing course. Furthermore, *Rose* was not a case involving ERISA § 502(a)(2), nor one discussing the jury trial right. By contrast, a majority of the courts that have considered Plaintiffs' proposed reading of Supreme Court precedent in deciding whether to strike jury demands for claims brought under ERISA § 502(a)(2)—the precise

11

Further lessening the persuasive value of Plaintiffs' interpretation of their cited Supreme Court cases, none of those cases involved claims under the specific provision at issue (ERISA § 502(a)(2)), *see* Opp. at 13 n. 1, nor did any of those cases address whether the plaintiffs had a right to a trial by jury, *see* Appeal at 26. While Plaintiffs are correct that the same holds for *Amara*, *see id.*, "it is not clear that the Court's holding [*in Montanile*] was meant to overturn the well-established precedent regarding the right to a jury trial under the claims asserted here." *Gernandt v. SandRidge Energy Inc.*, No. 15-1001, 2017 WL 3219490, at *12 (W.D. Okla. July 28, 2017); *see also Ramos v. Banner Health*, No. 15-2556, 2019 WL 1558069, at *3 (D. Colo. Apr. 10, 2019) (quoting *Gernandt* and finding its "reasoning persuasive"); *see supra* n.7. The Court is therefore unpersuaded that the Supreme Court precedent cited by Plaintiffs abrogates (1) *Pane*, which is binding precedent in this Circuit that *does* address the right to a jury trial for ERISA § 502(a)(2) claims or (2) *Amara*, which can be reconciled with *Montanile* and the other Supreme Court precedent Plaintiffs raise, and, most importantly, with *Pane*.[8]

---

circumstance in which this Court finds itself here—have rejected the *Rose* majority's reasoning. *See infra* n.9. Finally—and most importantly—while the Fourth Circuit is empowered to overturn its own prior decisions, this Court may not overturn binding Third Circuit precedent. *Cf. Bing v. Schultz*, No. 07-0643, 2008 WL 163689, at *5 (D.N.J. Jan. 14, 2008) ("[Supreme Court case] does not overrule [Third Circuit case]. It may be that the Court of Appeals for the Third Circuit ultimately will determine that [Supreme Court case] so undercuts the reasoning in [Third Circuit case] that the Court of Appeals will overrule [Third Circuit case]. Until such time, however, [Third Circuit case] is directly applicable and binding precedent upon this Court.").

[8] Numerous other district courts have stricken jury demands for ERISA § 502(a)(2) claims after rejecting Plaintiffs' proposed reading of the aforementioned Supreme Court precedent. *See, e.g.*, *Harmon*, 2023 WL 2474503, at *2–3 (considering and rejecting arguments under *Montanile*, *Great-West*, and *Mertens*, that make-whole relief was legal in finding that applying *Amara* to hold that such relief was equitable was "in line with that of a majority of district courts considering ERISA claims against fiduciaries"); *Tracey v. Massachusetts Inst. of Tech.*, 395 F. Supp. 3d 150, 153–54 (D. Mass. 2019) ("choo[sing] to follow numerous other district courts that have allowed defendants' motions to strike the jury demand" after finding that *Mertens*, *Great-West* and *Montanile* did not require otherwise); *Troudt v. Oracle Corp.*, No. 16-175, 2019 WL 8348317, at *1 (D. Colo. May 30, 2019) (holding that *Montanile* and *Great-West* "are not directly (or even very

Nor is the Court persuaded by Plaintiffs' extensive reliance on statutory analysis to attempt to undermine *Amara*. Plaintiffs argue that "[t]he Order simply assumes that *Amara*'s finding that a monetary remedy can constitute 'equitable relief' under § [502](a)(3) must mean that all monetary remedies under different ERISA provisions are also equitable relief . . . disregards the important textual differences between § [502](a)(2) and (a)(3)." Appeal at 24. Not so. *First*, as Defendants point out, while Plaintiffs claim that "*Amara* simply does not address whether compensation for 'losses to [a] plan' under [ERISA] § [502](a)(2) constitutes a legal or equitable remedy," Appeal at 24, in the next breath they argue that the Court should follow other Supreme Court cases that do not address ERISA § 502(a)(2), either, *see id.* at 25–28. *See* Opp. at 13 n.1. Plaintiffs cannot have it both ways. S*econd*, Plaintiffs make an unconvincing logical leap between the statutory arguments they make and the impact of that statutory analysis on the case at bar. Plaintiffs contend that because "Section 1109(a), incorporated in § [502](a)(2) . . . us[es] the phrase 'equitable or remedial relief' rather just the phrase "equitable relief" found in other subsections, the remedies available under ERISA § 502(a)(2) must include more than just equitable remedies.

---

obliquely) on point, and the dicta on which plaintiffs here rely thus presents no compelling reason to depart from precedent and the great weight of authority in other circuits in this regard" (citation modified)); *Henderson v. Emory Univ.*, No. 16-2920, 2018 WL 11350441, at *5 (N.D. Ga. Feb. 28, 2018) (finding that "the remedy the plaintiffs s[ought] [wa]s equitable in nature" and striking jury demand after distinguishing *Montanile*, *Great-West*, and *Mertens*); *Pledger*, 2017 WL 11568409, at *3–5 (rejecting plaintiffs' reliance on *Montanile* and *Great-West* and striking jury demand); *Bell v. Pension Comm. of Ath Holding Co., LLC*, No. 15-2062, 2016 WL 4088737, at *2 (S.D. Ind. Aug. 1, 2016) (holding that "it wa[s] not clear that the court's holding [in *Montanile*] was meant to overturn the well-established precedent regarding the right to a jury trial under Section 502(a)(2) as the Plaintiffs assert" and striking jury demand); *In re YRC Worldwide, Inc. ERISA Litig.*, No. 09-2593, 2010 WL 4920919, at *4 (D. Kan. Nov. 29, 2010) ("The Court does not agree that, by th[e] language of *Great-West*, the Supreme Court has overturned the traditional view that plaintiffs' claims are equitable claims arising under trust law for purposes of the Seventh Amendment."); *In re First Am. Corp. ERISA Litig.*, No. 07-1357, 2009 WL 536254, at *3 (C.D. Cal. Feb. 9, 2009) (finding that Ninth Circuit precedent holding that violations of ERISA § 502(a) are equitable for the purposes of Seventh Amendment jury trial right was not "clearly irreconcilable with *Great-West*" (citation modified)).

Appeal at 24–25. But (assuming *arguendo*) that the remedies available under ERISA § 502(a)(2) include more than just equitable remedies does not compel the conclusion that the remedy Plaintiffs seek *here* is legal in nature. As explained *supra*, the remedy Plaintiffs seek maps on exactly to the "surcharge" remedy the Supreme Court found equitable in *Amara*—a "remedy extended to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary." *Amara*, 563 U.S. at 442. And, "[a]lthough the *Amara* Court examined whether the remedies sought by the plaintiffs could qualify as 'equitable relief' under § [502](a)(3), its analysis did not depend on the language of subsection (a)(3)." *Harmon*, 2023 WL 2474503, at *3. As Judge Almonte explained, "nowhere does *Amara* suggest that relief that is equitable under subsection (a)(3) might be legal under subsection (a)(2). Instead, the *Amara* Court focused more generally on the history of equity courts and what qualifies as equitable relief." Order at 6 (quoting *id.*). The Court accordingly rejects Plaintiffs' statutory interpretation arguments—as it did with Plaintiffs' arguments regarding the *Mertens* line of cases—and finds that Plaintiffs have not met their burden of demonstrating that Judge Almonte's application of *Amara*—or *Pane*, as established *supra* Section I.A—is contrary to law. The Court will therefore **DENY** Plaintiffs' Appeal and **AFFIRM** Judge Almonte's Order striking Plaintiffs' jury demand.

      **B.**      **The Court Need Not Impanel an Advisory Jury**

The Court now turns to Plaintiffs' request to impanel an advisory jury. *See* Appeal at 31–34. Judge Almonte declined to consider Plaintiffs' request, explaining that the "decision is better suited for the District Judge who will be conducting the trial." Order at 8. Having now considered Plaintiffs' request that the Court impanel an advisory jury, this Court will deny it.

Advisory juries are only available where—as the Court has determined here—the plaintiff lacks the right to a jury trial. Fed. R. Civ. P. 39(c)(1). Plaintiffs argue that an advisory jury would be appropriate here because ERISA claims like those at issue in the instant matter turn on witness

14

credibility and an advisory jury would assist in assessing this credibility. Appeal at 33–34. Defendants object to this request, stating that "[c]ourts routinely deny requests for advisory juries where an advisory jury would 'add unnecessary expense, time and complexity to a case that has no special factors or extraordinary circumstances present.'" Opp. at 19–20 (quoting *Kingsbury v. U.S. Greenfiber, LLC*, No. 08-151, 2013 WL 12121540, at *1 (C.D. Cal. Nov. 4, 2013)).

"[T]he use of an advisory jury under [Federal Rule of Civil Procedure] 39(c) lies within the discretion of the trial court and is not a matter of right." *U.S. v. Ellix Research Labs, Inc.*, 08-151, 300 F.3d 550, 554 (7th Cir. 1962); *Koninklijke Philips N.V. v. Hunt Control Sys., Inc.*, No. 11-3684, 2016 WL 6892079, at *4 (D.N.J. Nov. 21, 2016). Here, the Court declines to use its discretion to impanel an advisory jury because "an advisory jury would not aid the timely and effect disposition of this case." *Astellas Pharma Inc. v. Sandoz Inc.*, No. 20-1589, 2024 WL 4554799, at *5 (D. Del. Oct. 22, 2024). Under Federal Rule of Civil Procedure 52(a)(1), the Court would still be required to issue its own findings of fact were it to impanel an advisory jury. "Thus, empaneling an advisory jury would be duplicative of the Court's role." *Koninklijke*, 2016 WL 6892079, at *4; *see also Beesley v. Int'l Paper Co.*, No. 06-703, 2009 WL 260782, at *6 (S.D. Ill. Feb. 4, 2009) (agreeing with defendants in an ERISA case that "an advisory jury would not promote judicial economy but rather would prolong proceedings, substantially increase the cost of the trial to the parties, and divert the Court's resources").

Moreover, "although [Defendants] may be correct in predicting that . . . credibility [of witnesses] will be called into question at . . . trial," *see* Appeal at 33–34, the Court is "confident that [it] will be able to discharge properly [its] function as the finder of fact, including assessments of the credibility of the witnesses before [it]." *Dewey Electronics Corp v. Montage, Inc.*, 117

F.R.D. 73, 75 (M.D. Pa. 1987). Accordingly, the Court will **DENY** Plaintiffs' request to impanel an advisory jury.

### IV.   CONCLUSION AND ORDER

For the foregoing reasons,

**IT IS**, on this **4th** day of August 2025,

**ORDERED** that Plaintiffs' Appeal, D.E. 266, is **DENIED**; and it is further

**ORDERED** that Magistrate Judge Almonte's Order, D.E. 265, is **AFFIRMED**; and it is further

**ORDERED** that Plaintiffs' request to impanel an advisory jury is **DENIED**.

Evelyn Padin, U.S.D.J.